UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Robert Avallone, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | File Nos. 2:06-CV-253 |
| | : | 2:07-CV-1 |
| Robert Hofmann, | : | (Consolidated) |
| Commissioner, Lisa Trowt, | : | |
| Dr. Susan Wehry, John Doe, | : | |
| Jane Doe, Vermont | : | |
| Department of Corrections | : | |
| Dr. John Leppman, | : | |
| Dr. Rousse, Prisoner | : | |
| Health Services, Medical | : | |
| Providers and Dr. Ballard, | : | |
| MHM Correctional Services | : | |
| Inc., Mental Health | : | |
| Providers, | : | |
|     Defendants. | : | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 59 and 65)

Robert Avallone, a former Vermont inmate proceeding *pro se*, claims that he received constitutionally inadequate medical care while in prison. Currently pending before the Court is a motion for summary judgment filed by defendants Robert Hofmann, Susan Wehry, Dr. John Leppman, Dr. Rousse, and Prison Health Services. (Paper 59). Also pending is a motion to dismiss submitted by defendant Lisa Trowt. (Paper 65). For the reasons set forth below, I recommend that the

motion for summary judgment be GRANTED, and the motion to dismiss be DENIED.

## Background

Avallone was incarcerated at the Southern State Correctional Facility ("SSCF") in Springfield, Vermont on November 16, 2006. Prior to his imprisonment, he was involved in a pair of accidents that left him with chronic lower back and leg pain. For treatment of the pain, he was prescribed various medications, including narcotic pain killers.

The complaint alleges that these medications were confiscated upon his arrival as SSCF. Avallone also alleges that he received no medical attention whatsoever during his first two days in prison. As a result, he allegedly suffered withdrawal symptoms that included a seizure, vomiting, diarrhea and dehydration.

The complaint asserts that Dr. John Leppman, the medical director at SSCF, ultimately prescribed Flexeril for Avallone's pain. Avallone claims that this treatment was ineffective, and that he alerted the defendants of this fact through complaints to prison nurses, sick call requests, and Vermont Department of Corrections ("DOC") grievances. His pleas allegedly went unanswered, and he now claims that Dr.

2

Leppman made "a deliberate effort of non-treatment to Plaintiff's serious medical needs during his incarceration." (Paper 4 at 6). Avallone also accuses Dr. Leppman of failing to detoxify him "according to the prevailing standard of community care." Id.

In addition to Dr. Leppman, Avallone is suing former DOC Commissioner Robert Hofmann, whom the complaint claims was "responsible for the care and custody of Plaintiff." Id. at 2. Also named as a defendant is Probation Officer Lisa Trowt. The only substantive mention of Trowt in the complaint is a request that she and other Probation Officers be ordered to return to Avallone the medications that were confiscated when he was incarcerated.

Defendant Dr. Ballard was allegedly a staff psychiatrist at SSCF "responsible for working with the medical director, in formulating and implementing detoxification if appropriate." Id. at 3. With respect to defendant Dr. Rousse, Avallone claims simply that Rousse was a supervisor at Prison Health Services. Similarly, Dr. Susan Wehry is alleged to have been the Medical Director for the DOC "responsible for supervising the conduct of the [sic] all medical contracts and contractors, that provide

3

medical care, treatment and services to inmates housed in Vermont prisons." Id.

In response to Avallone's allegations, defendants Hofmann, Wehry, Leppman, Rousse and Prison Health Services have moved for summary judgment. Their motion is unopposed and, as a result, their factual assertions are uncontested. Those assertions are based primarily on an affidavit from Dr. Leppman.

Dr. Leppman's affidavit states that when Avallone first arrived at SSCF, he underwent a medical screening. Dr. Leppman notes that, according to Avallone's medical records, prior treating physicians had expressed concern about Avallone's use of pain medications. For example in 2004, one such physician, Dr. Robert Monsey, opined that Avallone had become dependent upon narcotic pain killers.

When Avallone entered SSCF, medical staff allowed him to continue taking Celexa, and provided him ibuprofen and Tylenol for pain. His other medications were apparently discontinued. The following day, Dr. Leppman gave orders over the telephone for Avallone to undergo detoxification. Per Dr. Leppman's orders, medical personnel monitored Avallone's symptoms, providing him Tylenol, Kaopectate,

Phenegran, Bentyl, Atrax, and Colnidine to ease the detoxification process. The medical records do not indicate any serious withdrawal symptoms.

Dr. Leppman met with Avallone for the first time on November 21, 2006, five days after Avallone's incarceration. During that meeting, Dr. Leppman explained that detoxification was standard procedure throughout the correctional system, and was considered medically appropriate. Dr. Leppman also told Avallone that he could not give him Oxycodone, and that he preferred for Avallone to manage his pain without narcotics. Consistent with the allegations in Avallone's complaint, Dr. Leppman states that Avallone was prescribed Flexeril for pain.

On December 12, 2006, in response to Avallone's complaints of back pain, Dr. Leppman prescribed Hydrocodone to be taken twice daily. On January 24, 2007, prison medical staff requested a physical therapy consultation for Avallone. The evaluation was approved and scheduled for January 31, 2007, but Avallone refused it.

On April 3, 2007, Dr. Leppman discussed Avallone's request for additional pain medication. Avallone requested Hydrocodone, but Dr. Leppman believed that Hydrocodone was

inappropriate. Avallone instead "agreed to settle for additional Flexeril, which was prescribed at 10 mg twice a day for 30 days." (Paper 59-3 at 3).

On May 8, 2007, Dr. Leppman provided Avallone with a prescription for Hydrocodone for a period of 90 days. Avallone was also provided a 30-day prescription for Flexeril on May 3, 2007, and again on May 30, 2007.

Avallone was transported to an out-of-state facility on June 9, 2007. He returned to Vermont on September 19, 2007. Upon his return, he was given Vicoden to be taken twice a day for three days. Dr. Leppman met with Avallone on October 4, 2007, and restarted him on Piroxicam. Piroxicam was prescribed again on November 6, 2007.

Avallone was released from SSCF on November 10, 2007. His medical records indicate that he left the facility without his medications.

As noted above, currently before the Court are a motion for summary judgment and a motion to dismiss. The motion for summary judgment submits that Avallone has failed to establish an Eighth Amendment claim against defendants Hofmann, Wehry, Leppman, Rousse and Prison Health Services with regard to his medical care. The motion to dismiss,

filed by defendant Lisa Trowt, seeks dismissal under Fed. R. Civ. P. 37 due to Avallone's alleged failure to abide by Court orders with respect to discovery. The Court will address each of these motions in turn.

## Discussion

I. <u>Summary Judgment Motion</u>

   A. General Standard

Under Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the court must "interpret all ambiguities and draw all factual inferences in favor of the nonmoving party." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). The burden of demonstrating the absence of a genuine issue of material fact rests upon the party seeking summary judgment. *Adickies v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once a properly supported motion for summary judgment has been made, the burden shifts to the

nonmoving party to set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(2). The Rules require that a nonmoving party set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions, showing a genuine issue exists for trial. *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (citing *Celotex*, 477 U.S. at 324).

The summary judgment motion in this case is unopposed. Consequently, the Court may accept the factual assertions in the accompanying statement of material facts as true, so long as those assertions are supported by the record. *Vermont Teddy Bear Co. v. Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). That said, summary judgment is not automatic. The Second Circuit has held that

> the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.

*Id.* at 244. Accordingly, the Court must review the defendants' motion and determine whether they are, in fact, entitled to summary judgment.

    B. Eighth Amendment Claim

The moving defendants argue that Avallone has failed to state an Eighth Amendment claim with respect to his medical care at SSCF.  The legal standard for an Eighth Amendment claim is well established.  First, Avallone must allege a sufficiently serious deprivation that is, "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks omitted).  Second, he must show that the defendant had a sufficiently culpable frame of mind, defined as "more than negligence, but less than conduct undertaken for the very purpose of causing harm."  *Hathaway*, 37 F.3d at 66.  This state of mind requires that a defendant have been aware of facts "from which the inference could be drawn that a substantial risk of serious harm exists," and that he, in fact, drew that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The defendants submit that "Avallone has failed to establish either an objectively serious medical need or a subjectively sufficient state of mind."  (Paper 59 at 5).  Their motion, however, does not address the seriousness of Avallone's conditions.  Consequently, the record on this point is quite thin, as the Court has only Avallone's own

9

depiction of his condition as "strong chronic pain in his low back and extending down both legs" and his description of his withdrawal symptoms. (Paper 4 at 4).

Depending upon the circumstances, severe back pain, especially if lasting an extended period of time, may qualify as a "serious medical need" under the Eighth Amendment. *See, e.g., Mendoza v. McGinnis*, 2008 WL 4239760 at *10 & n.16 (N.D.N.Y. Sept. 11, 2008) ("The question of whether chronic back pain can rise to a level of constitutional significance is dependent upon the circumstances of the particular case presented."); *Faraday v. Lantz*, 2005 WL 3465846 at *5 (D. Conn. Dec. 12, 2005) (persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica ..." leading to severe pain constitute a serious medical need); *but see Davis v. Reilly*, 324 F. Supp. 2d 361, 368 (E.D.N.Y. 2004) (A "sprained back and neck ... do not constitute a serious medical condition."). Avallone contends that his symptoms included "pain and numbness bilaterally in his legs, [and an] inability to stand or sit for more that thirty (30) minutes without extreme pain and discomfort in his back and legs." If Avallone's pain was as severe as he alleges, his

condition was sufficiently serious for Eighth Amendment purposes.

Avallone's withdrawal symptoms included a seizure, vomiting, diarrhea, and dehydration for a period of two days.  These sorts of symptoms do not generally provide the basis for an Eighth Amendment claim.  *See, e.g., Stokes v. Goord*, 2007 WL 995624, at *3 (N.D.N.Y. March 30, 2007) (finding constipation, lack of energy, diarrhea, staph infections, blurry vision, and painful lumps on his arms insufficient for Eighth Amendment claim); *Watkins v. Trinity Serv. Group, Inc.*, 2006 WL 3408176, at *4, *6 (M.D. Fla. Nov. 27, 2006) (holding that diarrhea, vomiting, cramps, nausea and headaches from eating spoiled food was not sufficiently serious); *Ross v. McGinnis*, 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (holding that complaints of abdominal pain, vomiting, heartburn, constipation, and extreme body heat do not constitute a serious medical need).  Even assuming a serious medical condition, however, Avallone offers no evidence to support his claim of deliberate indifference.  Indeed, the undisputed record indicates that prison medical staff, including Dr. Leppman, was responsive to Avallone's medical needs.

When Avallone was first admitted at SSCF he underwent a standard medical screening.  In the course of that screening, SSCF medical staff decided to discontinue his narcotic medications, but allowed him to continue taking other medications for pain.  After his narcotic medications were confiscated, he was provided a series of medications to ease his withdrawal symptoms.  According to Dr. Leppman, Avallone's detoxification as a "standard procedure" and was "medically appropriate."

Avallone alleges that he had no, or no meaningful, treatment for his head trauma, pain and numbness in his lower back and legs, or his sciatic nerve damage.  However, the record indicates immediately upon his incarceration, Avallone was provided Tylenol and ibuprofen for pain.  On December 12, 2006, less than one month after Avallone's arrival at SSCF, Dr. Leppman prescribed Hydrocodone for back pain.  Avallone continued to receive treatment for pain on the following occasions: January 24, 2007 (physical therapy consultation); April 3, 2007 (Flexeril prescription); May 2, 2007 (Flexeril); May 8, 2007 (Hydrocodone); and, after returning from out of state on October 4, 2007 (Vicodin and Piroxicam).  No reasonable juror could find that this level

12

of consistent care in response to Avallone's requests for treatment violated Avallone's constitutional rights. *See Davidson v. Scully*, 155 F. Supp. 2d 77, 83-84 (S.D.N.Y. 2001) (no subjective deliberate indifference where "plaintiff was examined and treated . . . on numerous occasions by DOCS medical personnel . . . ."); *Williams v. M.C.C. Inst.*, 1999 WL 179604, at *9 (S.D.N.Y. Mar. 31, 1999) (no subjective deliberate indifference where plaintiff was examined for dental problems on eight separate occasions during one year and five different occasions the next year and was always given treatment when he sought it), *aff'd*, 101 Fed. Appx. 862 (2d Cir. 2004); *Johnson v. Dep't of Corr.*, 1995 WL 121295 at *3 (S.D.N.Y. Mar. 21, 1995) (no deliberate indifference where "[d]uring the nine month period that plaintiff was in DOC custody he was examined and treated on numerous occasions for his hip condition and a myriad of other ailments.").

Avallone also alleges that when he did receive treatment, it was not meaningful. This allegation appears to pertain to Dr. Leppman's provision of Flexeril for pain. While Dr. Leppman did prescribe Flexeril, he also provided Avallone with Hydrocodone and Vicodin when appropriate. At

13

most, Avallone's claim with respect to the use of Flexeril amounts to a disagreement about the proper treatment. It is well established, however, that "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Given that, at one point, Avallone agreed to take Flexeril despite his preference for a narcotic, it appears from the record that Flexeril was at least "adequate," and that there is no basis for an Eighth Amendment claim.

In sum, Avallone alleges that the defendants ignored his requests for different medications. His claims, however, are belied by an undisputed record that indicates regular medical attention, discussions about the appropriate treatment, and at times, acquiescence to Avallone's wishes. Nothing in this record reflects indifference, much less a deliberate insensitivity to Avallone's allegedly serious medical needs.

With respect to medical care, prison medical staff are vested with broad discretion to determine what method of

diagnosis and/or treatment to provide their patients. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998). "[S]ection 1983 was not designed to permit the federal courts to sit as final arbiters of the sufficiency of medical practices of state prisons." *White v. Haider-Shah*, 2008 WL 2788896, at *7 (N.D.N.Y. July 17, 2008) (citing *Church v. Hegstrom*, 416 F.2d 449, 450-51 (2d Cir. 1969)). Some courts have allowed medical providers a "presumption of correctness" with respect to the care and safety of patients. *Perez v. The County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (citing *Kulak v. City of New York*, 88 F.3d 63, 77 (2d Cir.1996)). Here, Avallone's medical care was frequent, consistent, and apparently appropriate to his situation and needs. To the extent that Avallone challenges the decisions made by prison personnel with respect to particular medications, the Court has no basis upon which to doubt the propriety of medical staff decisions. Consequently, the Court should find that there are no genuine issues of material fact with respect to Avallone's Eighth Amendment claims against the moving defendants, and GRANT their motion for summary judgment.

II. Motion to Dismiss

Also pending before the Court is defendant Lisa Trowt's motion to dismiss pursuant to Fed. R. Civ. P. 37. Trowt bases her motion upon Avallone's repeated failure to serve answers to interrogatories. The procedural history on this issue is extensive.

Trowt served her first set of interrogatories and request for production of documents upon Avallone on April 7, 2008. When Avallone failed to respond, Trowt's attorney wrote to him on May 14, 2008 and asked him to communicate his intended response date. When Avallone did not reply, Trowt's attorney sent additional correspondence on June 13, 2008 and July 1, 2008. The July 1 letter informed Avallone that if he did not respond by July 15, 2008, counsel would file a motion to compel. When Avallone did not respond, counsel moved to compel on July 24, 2008, and Judge Niedermeier granted the motion on October 17, 2008.

Notwithstanding Judge Niedemeier's order, Avallone still did not deliver his responses. Consequently, Trowt filed a motion to dismiss on December 3, 2008. On March 31, 2009, the Court denied the motion to dismiss, but warned Avallone that continued non-compliance would likely result

in dismissal of the case.

On April 1, 2009, Avallone filed an untimely response in opposition to Trowt's motion to dismiss. In his opposition, Avallone explained that he had not received any interrogatories from the defendants, had not been receiving correspondence from the Court, and had believed that the case was dismissed. Consequently, Avallone requested that another copy of the interrogatories be sent to him, and that he be allowed an extension of time in which to file responses. Avallone sent a copy of his opposition to counsel for Dr. Ballard and MHM, but not to Trowt's attorney. (Paper 62 at 7).

Trowt filed her current motion to dismiss on April 30, 2009, arguing that Avallone still had not responded to her interrogatories. There is no indication on the docket, however, that another copy of those interrogatories was ever served upon the plaintiff.

The Second Circuit recently noted that "[p]ro se litigants, though generally entitled to 'special solicitude' before district courts, are not immune to dismissal as a sanction for noncompliance with a discovery order." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)

(quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)). The Circuit Court has also warned, however, that "dismissal with prejudice is a harsh remedy to be used only in extreme situations." *Id.* (citing *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

Avallone has failed three times to comply with this Court's orders to respond to interrogatories. Each time, the Court warned Avallone that failure to comply with the order might result in dismissal. He now claims that he never received the interrogatories. Part of the blame for the non-receipt appears to lie with Avallone himself, as he is obligated to apprise the Court and the parties of his current mailing address at all times. If he was not receiving Court communications for several months, then he was not fulfilling this important obligation.

Rule 37 cases dictate that the most severe sanctions should not be imposed unless the failure to comply with a discovery order "'is due to willfulness, bad faith, fault or gross negligence, rather than inability to comply or mere oversight.'" *Anthropologie v. Forever 21, Inc.*, 2009 WL 690126, at *3 (S.D.N.Y. 2009) (quoting *Handwerker v. AT&T*

18

*Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986). Here, Avallone's conduct is approaching gross negligence, as both the defendants and the Court have been making efforts to engage him in discovery for over a year. However, since the Court's last order denying Trowt's previous motion to dismiss, Avallone has requested another copy of her interrogatories. Nothing else has changed since that time, and thus the Court's reasoning in its prior order remains controlling.

Accordingly, it is hereby ORDERED that Trowt and any other defendants with outstanding discovery requests shall re-serve those requests forthwith, and shall file certificates of service as required by the Local Rules. Avallone shall respond to those requests within 30 days. If timely responses are not served, the defendants may file appropriate motions. For present purposes, I recommend that Trowt's motion to dismiss (Paper 65) be DENIED.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 59) be GRANTED, and that all claims against defendants Robert

Hofmann, Susan Wehry, Dr. John Leppman, Dr. Rousse, and Prison Health Services with regard to Avallone's medical care be DISMISSED.[1]

I further recommend that defendant Lisa Trowt's motion to dismiss (Paper 65) be DENIED.

Dated at Burlington, in the District of Vermont, this 11th day of August, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objection which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72.1, 72.3, 73.1, 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

[1] Claims still remain against the supervisory defendants, former Commissioner Hofmann and Dr. Wehry, with regard to Avallone's mental health care. The direct mental health care providers, Dr. Ballard and MHM, have not moved for summary judgment.